# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHRISTINE MARIE PERKINS,

    Plaintiff,

    v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 3:17-cv-200 (MPS)

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of plaintiff Christine Marie Perkins's application for disability insurance benefits. The appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[1] Ms. Perkins now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("Commissioner"). In the alternative, Ms. Perkins seeks an order remanding her case for a rehearing. The Commissioner, in turn, has moved for an order affirming the decision.

Ms. Perkins argues, among other things, that the Administrative Law Judge ("ALJ") erred in (1) failing to consider whether she was *per se* disabled under medical listing 12.05C, i.e., intellectual disability; (2) failing to properly consider medical opinion evidence regarding her

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929 *et seq.* Claimants can appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967 *et seq.* If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States District Court. The Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

mental functioning; and (3) failing to properly evaluate her testimony. Because I agree that the ALJ erred in failing to consider whether Ms. Perkins was disabled under Listing 12.05C and did not properly apply the treating physician rule with regard to her treating internist, the case is REMANDED.

## **BACKGROUND**

On February 21, 2014, Ms. Perkins filed an application for Social Security Disability benefits and Supplemental Security Income alleging an onset date of disability of June 10, 2010.[2] (Joint Stipulation of Facts, ECF No. 17 at 2.) A disability adjudicator in the Social Security Administration denied her initial request for disability benefits and thereafter denied her request for reconsideration. (*Id*.) On January 28, 2016, Ms. Perkins appeared for a hearing before ALJ John Noel. (*Id*.) The ALJ issued a decision denying benefits on March 23, 2016. (*Id*.)

The ALJ found that Ms. Perkins was not disabled. (*Id*.) Specifically, the ALJ found that while Ms. Perkins's asthma,[3] Bipolar I disorder, and posttraumatic stress disorder ("PTSD") were severe impairments, she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under 20 C.F.R. Part 404. The ALJ found that Ms. Perkins's bipolar disorder and PTSD did not satisfy the criteria of Listings 12.04[4] and 12.06[5] because Ms. Perkins demonstrated mild restrictions with respect to her daily life activities, had moderate difficulties with respect to social functioning and concentration,

---

[2] Ms. Perkins previously filed applications for SSD and SSI on June 23, 2010, with an onset of disability of June 10, 2010. (Tr. 163.) The ALJ denied that claim on June 15, 2012, and the Appeals Council denied review. The parties agree that Ms. Perkins's disability onset date is June 16, 2012, the day after the date of her previous unfavorable ALJ decision, in accordance with the doctrine of *res judicata*. (ECF No. 17 at 2 n.2).

[3] Because Ms. Perkins does not challenge the ALJ's decision with respect to her physical impairments, I do not discuss those aspects of the decision in this ruling.

[4] Listing 12.04 concerns depressive, bipolar, and related disorders.

[5] Listing 12.06 concerns anxiety and obsessive-compulsive disorders.

persistence, or pace, and neither experienced episodes of decompensation nor was hospitalized in connection with her mental impairments since her alleged onset date. The ALJ next found that Ms. Perkins had the residual functional capacity ("RFC") to perform medium work, except that she could only frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, and frequently balance, stoop, kneel, crouch, or crawl; could have no exposure to extreme heat or extreme cold, occasional exposure to dust, odors, fumes and pulmonary irritants; could perform simple routine tasks, but not at a production rate; could use judgment related to simple routine tasks; could deal with changes in the work setting limited to simple, work related decisions; and could have occasional contact with the public. (R. 19.)

Specifically, the ALJ found that while Ms. Perkins's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. The ALJ found that although Ms. Perkins was unable to perform her past relevant work as a sales attendant, there were jobs that existed in significant numbers in the national economy that she could perform based on her age, education, work experience, and RFC. (R. 23.)

Ms. Perkins requested review of the ALJ's decision by the Appeals Council, which denied review on December 13, 2016, making the ALJ's decision the final decision of the Commissioner. (ECF No. 17 at 2.) This appeal followed. Specific facts and portions of the ALJ's decision will be discussed below as necessary.

## **STANDARD**

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

. . . .” 42 U.S.C. § 423(d)(1).  To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.

The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" that limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4). If the claimant has one of these enumerated impairments, the Commissioner will automatically consider that claimant disabled, without considering vocational factors such as age, education, and work experience. *Id.* (4) If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work the claimant could perform. *Id.* To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  The Commissioner bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4).

"A district court reviewing a final ... decision pursuant to … 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Accordingly, a district court may not make a

*de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Human Servs.,* 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the correct legal principles were applied in reaching the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## DISCUSSION

### I.     Listing 12.05C

Ms. Perkins argues that the ALJ failed to address whether her condition met or medically equaled the criteria under Listing 12.05C, which would have made her disabled *per se* at step three of the five-step evaluation process. 20 C.F.R. § 404.1520(a)(4)(iii). I agree and remand to the ALJ to consider this issue.

### A.  The ALJ's Failure to Consider Listing 12.05C

The parties do not dispute that Ms. Perkins notified the ALJ of her claim under Listing 12.05C. Though she neither listed an intellectual disability on her initial claim for benefits or during the reconsideration stage (R. 338, 364), nor mentioned an intellectual disability in her pre-hearing letter to the ALJ providing a "summary of the relevant medical evidence and [her] theory of disability" (R. 438), following the hearing, the ALJ informed Ms. Perkins that he would leave

the record open for an additional ten days so that she could submit additional evidence if she wished. (R. 304.) On February 10, 2016, Ms. Perkins submitted additional school records and notified the ALJ in a letter dated February 18, 2016 of her claim that she met the criteria of Listing 12.05C based on those records. (R. 442.) The parties agree that education records and IQ testing materials were submitted to the ALJ but for unknown reasons were not made part of the record until they were resubmitted to the Appeals Council. (ECF No. 17 at 2 n.5; R. 1409-29.)

The parties also do not dispute that the ALJ did not address Listing 12.05C in his decision. The ALJ's decision indicates that he received the additional school records submitted after the hearing. (R. 18, 21.) The ALJ did not acknowledge, however, that Ms. Perkins raised a claim under Listing 12.05C when submitting those records, and his opinion includes no discussion of Listing 12.05C.

Nonetheless, the Commissioner argues that the ALJ's decision was supported by substantial evidence because Ms. Perkins has not shown that she has an intellectual impairment or that she meets the requirements of Listing 12.05C. The Commissioner also argues that by not explicitly discussing Listing 12.05C, the ALJ concluded that it did not apply. Especially because the ALJ expressly addressed Listings 12.04 and 12.06 and concluded that they did not apply, the Commissioner's current reading of the ALJ's decision is implausible. In any event, the Court "may not properly affirm an administrative action on grounds different from those considered by the agency," *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008), and therefore may not affirm on the grounds that Ms. Perkins does not meet the criteria of a listing that was not even mentioned by the ALJ. Although the ALJ's decision does include some discussion of Ms. Perkins's intellectual capacity in formulating the RFC (R. 18, 21), the ALJ did not expressly evaluate the separate issues of Ms. Perkins's adaptive functioning and intellectual capacity to decide whether she met Listing

12.05C, as required under the Second Circuit's decision in *Talavera*. *See Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (noting that "there is no necessary connection between an applicant's IQ scores and her relative adaptive functioning" and considering whether Talavera met "her separate burden of establishing that she suffers from qualifying deficits in adaptive functioning"). *See also Newell v. Colvin*, No. 15 Civ. 7095 (PKC)(DF), 2017 WL 1200911, at *5-6 (S.D.N.Y. Mar. 31, 2017) (remanding where the ALJ failed to independently evaluate adaptive functioning and intellectual capacity under Listing 12.05C). Thus, even if the Court could piece together from the record substantial evidence to support a finding that Ms. Perkins did not meet Listing 12.05C, remand would still be required. *See Rousey v. Commissioner*, 285 F. Supp. 3d 723, 732 (S.D.N.Y. 2018) ("legal error alone [could] be enough to overturn the ALJ's decision") (internal quotation marks omitted). It is up to the ALJ to apply the criteria of Listing 12.05C in the first instance.

**B. Whether Remand Is Necessary**

"[W]here application of the correct legal principles to the record could lead to only one conclusion, [however], there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). *See also Tilbe v. Astrue*, No. 5:10-CV-910 (NAM/ATB), 2012 WL 2930784, at *10 (N.D.N.Y. July 17, 2012) (finding "any error in the ALJ's failure to consider" a particular listing "harmless because no view of the evidence would support a finding that plaintiff's impairment met all the specified medical criteria" of that listing). For the reasons set forth below, the Court cannot conclude that application of Listing 12.05C to the evidence in the record could lead to only one conclusion, i.e., a finding of no disability, as the record contains some evidence that Ms. Perkins met the criteria for that listing.

"For a claimant to show that his impairment matches a listing, [the impairment] must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

> Listing 12.05C states in pertinent part as follows:
>
> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .[6]

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05C (eff. Aug. 12, 2015 to May 23, 2016). "Thus, to meet Listing 12.05(C) [a claimant] must show (1) below average intellectual function with adaptive functioning deficits manifested before age 22 and continuing during the claim period, (2) a valid IQ score of 60 through 70, and (3) an impairment, other than her low IQ, that imposes an additional and significant work-related limitation of functioning." *Decarlo v. Astrue*, No. 8:06-CV-488 (LEK/VEB), 2009 WL 1707482, at *4 (N.D.N.Y. June 17, 2009) (internal quotation marks omitted).

There is at least some evidence in the record that Ms. Perkins meets these criteria. First, Ms. Perkins's qualifying IQ score demonstrates that she suffers from "significantly subaverage

---

[6] Prior versions of this listing used the same criteria, except that the Listing title used the term "mental retardation" rather than "intellectual disability." *See* 78 Fed. Reg. 46499-01, 2013 WL 3936340 (Aug. 1, 2013) ("Change in Terminology: 'Mental Retardation' to 'Intellectual Disability'"). *See also Talavera*, 697 F.3d at 148 n.2 (using the terms interchangeably before the terminology used in the SSA regulations changed). I use the term "intellectual disability" throughout this opinion to reflect the language of Listing 12.05.

general intellectual functioning . . . initially manifested . . . before age 22" under paragraph C of Listing 12.05. *Talavera*, 697 F.3d at 152. The record also contains some evidence that Ms. Perkins experienced adaptive deficits, or exhibited an "[in]ability to cope with the challenges of ordinary everyday life," *id*. at 153 (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)), beginning before age 22. Ms. Perkins was diagnosed with dyslexia and attended special education classes during high school. (R. 474.) *See Talavera*, 697 F.3d at 153 (interpreting requirement of "significantly subaverage general intellectual functioning *with* deficits in adaptive functioning" to mean that "an applicant's inadequate adaptive functioning must arise from her cognitive limitations, rather than from a physical ailment or other infirmity"). A May 22, 2003 school report—which was submitted to the ALJ but not made part of the record until resubmitted to the Appeals Council (ECF No. 17 at 2 n.5)—indicated she had difficulty with "reading, decoding, spelling, fine motor skills, and working memory." (R. 1412.) The report concluded that she required special education support in order to be successful in school. (*Id*.).[7]

Finally, the Commissioner has not addressed in her brief why the record compels "only one conclusion" as to the third requirement of Listing 12.05C, i.e., "a physical or mental impairment imposing an additional and significant work-related limitation of function," and thus I leave it to the ALJ to address that issue as part of his analysis of Listing 12.05C on remand.

---

[7] The Commissioner argues that "not a single treating or examining source diagnosed an intellectual impairment." (ECF No. 18-1 at 5.) But such a diagnosis is not required to meet the listing. "Courts have found circumstantial evidence, such as . . . evidence a claimant attended special education classes . . . or had difficulties in reading, writing or math" to demonstrate deficits in adaptive functioning prior to age 22. *Decarlo*, 2009 WL 1707482, at *6 (collecting cases and finding that the plaintiff "had deficits in intellectual and adaptive functioning manifested by, *inter alia*, her long history of special education, problems with reading comprehension and verbal skills, and profound difficulties with mathematics and money").

To be sure, there is evidence in the record that demonstrates that Ms. Perkins successfully adapted to any cognitive limitations and has been able "to cope with the challenges of ordinary everyday life," notwithstanding her experiences with trauma. She has helped with household chores, including laundry, cooking, and shopping. (R. 42, 374, 376-77.) She has taken care of her boyfriend's young children. (R. 46-47.) She has attended medical appointments on her own and used public transportation without assistance. (R. 38, 42.) She graduated from high school with "mostly average to above average grades" and planned to attend a community college to study culinary arts. (R. 611.) She maintained part-time work at Taco Bell, Walmart, and at an amusement park. (R. 45-46, 1243.)

Furthermore, her treating clinicians did not note cognitive or intellectual impairments or that her cognitive limitations impaired her ability to work. Treatment notes throughout 2012 reflected that she demonstrated "intact thought processes." (R. 663, 670-71, 654-55, 674-75.) LCSW Alan Lake of Hartford Behavioral Health noted on October 30, 2013, that Ms. Perkins "appear[ed] to be of normal intelligence." (R. 611.) APRN Jeannie Dilworth noted on August 6, 2014, that while Ms. Perkins had nightmares over her mother's and brother's deaths and experienced domestic violence with her ex-partner, she was "struggling to comply with her job due to all the appointments but loves her employment." (R. 1218.)

Nonetheless, after reviewing the evidence in the record, I do not find that it is so one-sided that it "could lead to only one conclusion," *Johnson*, 817 F.2d at 986—that Ms. Perkins did not exhibit the qualifying cognitive impairments and adaptive deficits under Listing 12.05C. Indeed, courts have held that evidence similar to the evidence in this record may be sufficient to meet the criteria of Listing 12.05. *See Lyons v. Colvin*, No. 7:13-CV-00614, 2014 WL 4826789, at *9 (N.D.N.Y. Sept. 29, 2014) (remanding where the claimant "graduated after his long history of

special education," and "did well in a class in which he was provided numerous educational and adaptive accommodations," because the claimant exhibited other indicators of adaptive deficits, such as difficulty with reading, following instructions, performing mathematical calculations, and maintaining employment); *Kennerson v. Astrue*, No. 10-CV-6591 (MAT), 2012 WL 3204055, at *8-12 (W.D.N.Y. 2012) (reversing ALJ's determination that the claimant did not meet the criteria of Listing 12.05C where she had been in special education classes but graduated high school, needed significant support to perform any work, had never held a job longer than six months, and could do simple cooking but needed help measuring ingredients).

Remand is therefore appropriate so that the ALJ may consider whether the evidence in the record supports a finding of disability under Listing 12.05C.

## II.     Medical Opinion Evidence

Ms. Perkins also argues that the ALJ and the Appeals Council failed to properly consider the medical opinion evidence regarding her mental functioning. In particular, Ms. Perkins argues that the ALJ failed to give weight to the opinions of Ms. Perkins's treating physician Dr. Robert Smith regarding her mental limitations or indicate why he did not accept those opinions; that the ALJ failed to appropriately weigh the opinions of Licensed Clinical Social Worker ("LCSW") Alan Lake and Licensed Marriage and Family Therapist ("LMFT") Joshua Cohen as non-acceptable medical sources; and that the Appeals Council failed to consider a new and material medical opinion by examining psychologist Dr. Daniel Morocco. I address these issues to provide guidance in the event the ALJ concludes that Ms. Perkins does not meet Listing 12.05C.

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R.

§ 404.1527(c)(2)). "The regulations further provide that even if controlling weight is not given to

the opinions of the treating physician, the ALJ may still assign some weight to those views, and

must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608

F. Supp. 2d 297, 301 (D. Conn. 2009). The Second Circuit has made clear that:

> [E]ven when a treating physician's opinion is not given controlling weight, SSA
> regulations require the ALJ to consider several factors in determining how much
> weight the opinion should receive. To override the opinion of the treating
> physician… the ALJ must explicitly consider, *inter alia*: (1) the frequency, length,
> nature, and extent of treatment; (2) the amount of medical evidence supporting the
> opinion; (3) the consistency of the opinion with the remaining medical evidence;
> and, (4) whether the physician is a specialist. After considering the above factors,
> the ALJ must comprehensively set forth his reasons for the weight assigned to a
> treating physician's opinion.

*Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and

alterations omitted). "The failure to provide good reasons for not crediting the opinion of a

claimant's treating physician is a ground for remand." *Id.*

### A.  Dr. Robert Smith and APRN Olga Colon

Ms. Perkins's treating physician Dr. Robert Smith, an internist, and APRN Olga Colon

provided a medical opinion that Ms. Perkins was moderately limited in her capacity to perform the

following activities: remembering locations and work-like procedures; maintaining attention and

concentration for extended periods; performing activities within a schedule, maintaining regular

attendance and being punctual with customary tolerances; sustaining an ordinary routine without

special supervision; working in coordination with or proximity to others without being distracted

by them; completing a normal workday or workweek without interruptions from psychologically

based symptoms; performing at a consistent pace without an unreasonable number and length of

rest periods; accepting instructions and responding appropriately to criticism from supervisors;

getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. (R. 1401-02.)

The Commissioner argues that the ALJ did not overlook or ignore the treating source statement provided by Dr. Smith and APRN Colon. But the portion of the ALJ's decision that the Commissioner points to, which did in fact discuss the weight given to that statement, concerned Ms. Perkins's physical limitations only, which she does not challenge here. (*See* R. 21 ("I gave little weight to the opinions in the medical source statement completed by Ms. Colon and cosigned by Dr. Smith . . . , which limited the claimant to performing work activity at the sedentary exertional level . . . ."). The portion of the ALJ's decision concerning her mental limitations does not discuss Dr. Smith's and APRN Colon's opinion at all. (*See* R. 22-23.) To the extent the ALJ considered that opinion, the failure to provide good reasons for his decision not to credit the opinion regarding Ms. Perkins's mental limitations was error. Even if the ALJ decided to give less weight to this opinion because of Dr. Smith's and APRN Colon's expertise in internal medicine rather than mental health, the ALJ was required to explain that reasoning in his decision. *See Greek*, 802 F.3d at 375; *Berg v. Colvin*, No. 3:14-CV-01042 (SALM), 2016 WL 53823, at *7-8 (D. Conn. Jan. 5, 2016) (remanding where the ALJ had determined that the treating physician's opinion was inconsistent and unsupported by other medical evidence, because the ALJ failed to explicitly consider the *Greek* factors in coming to that conclusion).

The error is not harmless in light of the ALJ's failure to consider the evidence under Listing 12.05C, an analysis in which these opinions would have been relevant. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (referring to "deficits in adaptive functioning" and "mental impairment imposing an additional and significant work-related limitation of function"). The opinions are

supported by other evidence in the record, such as Ms. Perkins's school records and intelligence evaluations. *See Burgess v. Colvin*, No. 15-CV-9585 (RLE), 2016 WL 7339925, at *13 (S.D.N.Y. Dec. 19, 2016) (remanding where the ALJ failed to "consider factors that weigh in favor of assigning greater weight to" the treating physician's opinion, including the claimant's continuing relationship with the doctor and other evidence in the record that supported the opinion). The ALJ's treatment of Dr. Smith and APRN Colon's opinions on Ms. Perkins's mental limitations is therefore grounds for remand.

### B. LCSW Alan Lake and LMFT Joshua Cohen

Ms. Perkins also argues that the ALJ erred by failing to give sufficient weight to the opinions of her treating social worker Alan Lake and her therapist Joshua Cohen.

LCSW Alan Lake provided a mental impairment questionnaire on May 5, 2014, in which he opined that while Ms. Perkins had made a "slight improvement" since he first began seeing her in August 2010, she had an "obvious problem" with several functional abilities related to daily living, social interactions, and task performance. (R. 890-92.) In particular, Lake opined that Ms. Perkins had daily problems with carrying out instructions, focusing long enough to finish assigned tasks, changing from one simple task to another, finishing work activities on time, and performing work activities on a sustained basis. (R. 892.)

LMFT Cohen provided a letter dated September 8, 2014, in which he opined that based on Ms. Perkins's mental health symptoms, she would "have difficulty functioning appropriately in a working environment." (R. 1126.) Cohen explained that following the murder of Ms. Perkins's mother and brother in 2012, her PTSD and mood disorder symptoms had been exacerbated, and that she suffered from flashbacks and nightmares at least four to five times weekly, avoided social situations, and had low energy, irritability, panic attacks, and anxiety frequently throughout the

week, which prevented her from functioning appropriately in a social environment. (*Id.*) Cohen also reported that Ms. Perkins was compliant with her medication but that her mental health symptoms "continue[d] to be an issue and difficult to manage." (*Id.*) Cohen wrote that Ms. Perkins had been recommended to engage in weekly or biweekly psychotherapy to learn skills to manage her symptoms. (*Id.*) Cohen also completed a mental impairment questionnaire on January 26, 2016, in which he opined that Ms. Perkins exhibited moderate-to-marked limitations (i.e., limitations that would frequently interfere with a workday) in several areas of mental functioning, such as understanding and remembering instructions, carrying out instructions and sustaining an ordinary routine without supervision, interacting appropriately with the public and getting along with coworkers and peers without distracting them, and responding appropriately to workplace changes. (R. 1348.) Cohen opined that Ms. Perkins likely would be absent from work once per month as a result of her mental impairments. (R. 1349.)

The ALJ stated that he considered Lake's medical source statement, and in particular, considered Lake's opinion that Ms. Perkins "had an obvious problem using appropriate coping skills to meet the demands of an ordinary work environment, handling frustration appropriately, and interacting appropriately with others and authority figures in a work environment" in determining Ms. Perkins's mental residual functional capacity. (R. 19, 22.)[8] The ALJ stated that he "gave less weight to that portion of [Lake's] opinion that the claimant would have obvious problems carrying out single step instructions because the results of the mental status evaluations from Hartford Behavioral Health did not support that conclusion." (R. 22.) Contrary to Ms.

---

[8] LCSW Lake and LMFT Cohen are not considered "acceptable medical sources," 20 C.F.R. § 404.1513(a), but are considered "other sources" from which evidence may show the severity of a claimant's impairments. *Id.* § 404.1513(d)(1). The ALJ therefore need not have given their opinions controlling weight, but appropriately gave their opinions "some consideration." *Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008).

Perkins's assertion, the ALJ did not "summarily reject[]" Lake's opinion. (ECF No. 16 at 5.) The ALJ's decision to give less weight to that portion of Lake's opinion was supported by evidence in the record, such as Dr. Michael Smith's assessment that Ms. Perkins's attention was focused and alert, her thought processes organized and clear, and his finding that she appeared "focused and cooperative." (R. 475-76.) The ALJ therefore did not err in assigning less weight to LCSW Lake's opinion.

The ALJ also stated that he considered LMFT Cohen's opinions, and in particular found that the psychiatric evidence supported his opinion that Ms. Perkins experienced flashbacks and nightmares if she did not take her medication. (R. 23.) The ALJ stated that he "gave less weight to [Cohen's] opinions that [Ms. Perkins] would experience moderate to marked difficulties performing mental work activity because the overall psychiatric evidence of record did not support those opinions when she was compliant with the use of medications and counseling." (*Id*.) Thus, the ALJ appropriately explained his reasoning for giving less weight to that portion of Cohen's opinions.

The ALJ's decision to give less weight to this portion of Cohen's opinion was supported by evidence in the record that Ms. Perkins's mental functioning improved after she began treatment through medication and counseling. For example, after Ms. Perkins was prescribed medications to treat mood, depressive, and anxiety disorders throughout 2012 and 2013 (*see, e.g.*, R. 555, 557), medical notes indicated that she was responding positively (R. 587) and showed normal affect, intact memory, focused and alert attention, organized and clear thought processes, and appropriate thought content. (R. 597.) In May 2014, APRN Jeannie Dilworth noted that Ms. Perkins was taking her medications as prescribed and denied any side effects. (R. 1214.) APRN Dilworth also reported that Ms. Perkins's thoughts were logical and based in reality, and that she showed an improved

level of functioning and was responding positively to her medications, and would continue treatment accordingly. (R. 1215.) LMFT Cohen also noted in August 2015 that Ms. Perkins acknowledged lessened intensity and frequency of her mental health symptoms, that she had been managing all of her health issues with her healthcare providers, that she had maintained stable, part-time employment and had a stable residence, and that she was motivated to attend psychotherapy and psychiatry. (R. 1242-43.) The ALJ therefore did not err in giving less weight to portions of Cohen's opinion regarding Ms. Perkins's mental functioning.

### C. Dr. Daniel Morocco

Ms. Perkins also argues that the Appeals Council erred in failing to consider a July 5, 2016 report by psychologist Dr. Daniel Morocco, which she submitted to the Appeals Council after the ALJ issued his decision. Based on Ms. Perkins's WAIS-IV[9] intelligence test results, Dr. Morocco concluded that Ms. Perkins's intellectual abilities ranged from Low Average to Intellectually Delayed, and that she presented with "substantial deficits in short-term auditory and visual memory, attention, concentration and focus." (R. 95.) He opined that, based on the test results, her "ability to sustain attention, concentrate, and exert mental control [was] in the extremely low range," as was her "ability in processing simple or routine visual material without making errors." (R. 93.) Dr. Morocco also observed that Ms. Perkins could not "sustain attention for any reasonable length of time," that she was "flooded by persistent, tragic memories," and that her "ability to function adequately in almost any situation [was] grossly impaired." (R. 95.)

Ms. Perkins argues that the Appeals Council erred in failing to consider Dr. Morocco's report under the requirements of 20 C.F.R. 405.401(c), applicable to claims filed in Connecticut

---

[9] The "WAIS-IV" refers to the 2008 version of the Wechsler Adult Intelligence Scale, a commonly used intelligence test. *See generally* https://wechslertest.com/.

at the time Ms. Perkins appealed the ALJ's decision to the Appeals Council.[10] That regulation provides:

> If you submit additional evidence, the Appeals Council will consider the additional evidence only where it relates to the period on or before the date of the hearing decision, and only if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, and

> (1) Our action misled you;

> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or

> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

20 C.F.R. § 405.401(c). The parties agree that this provision, which differs from the rule otherwise applicable in the Second Circuit, imposes a good cause requirement for submitting evidence late. *See Orriols v. Colvin*, No. 3:14-cv-863 (SRU), 2015 WL 5613153, at *2-4 (D. Conn. Sept. 24, 2015) (discussing the appropriate legal standard for new evidence in Connecticut under 20 C.F.R. § 405.401(c)).

Dr. Morocco's mental impairment questionnaire indicates that he first examined Ms. Perkins on July 5, 2016, and saw Ms. Perkins only once. (R. 85.). The accompanying report states that Ms. Perkins was "referred for a psychological evaluation to assess her current levels of functioning." (R. 91.) Nonetheless, the Second Circuit has held that "evidence of a qualifying deficit in adult cognitive functioning serves as prima facie evidence that those deficits existed prior

---

[10] Disability claims filed in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, or Connecticut are subject to the requirements of section 405.401. *See* Appendix to Subpt. A of Pt. 405 (eff. Mar. 23, 2008 – Jan. 16, 2017) ("We will apply the procedures in this part to disability claims (as defined in § 405.5) filed in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, or Connecticut."); *Orriols v. Colvin*, No. 3:14-cv-863 (SRU), 2015 WL 5613153, at *4 (D. Conn. Sept. 24, 2015).

to a petitioner's twenty-second birthday," in light of the reasonable presumption of "relative stability in a claimant's cognitive functioning over time." *Talavera*, 697 F.3d at 152. Further, as noted above, there is evidence in the record that Mr. Perkins had an intellectual disability before the age of 22, and the observations of Dr. Morocco are consistent with that evidence. Thus, Dr. Morocco's evaluation of Ms. Perkins's cognitive functions "relates to the period on or before the date of the hearing decision." *See Adams v. Colvin*, No. 3:15-cv-1061 (WIG), 2016 WL 5334646, at *2 (D. Conn. Sept. 22, 2016) (finding that a study taken approximately four months after the ALJ issued his decision related to the period on or before the date of the hearing decision where the results showed a chronic condition and were consistent with the symptoms the plaintiff testified to at the hearing).

Dr. Morocco's report is also relevant to the analysis that the ALJ should have undertaken under Listing 12.05C. In particular, it would have served as "additional objective evidence of the severity" of Ms. Perkins's mental impairments, which also "may have bolstered the credibility of her subjective testimony" regarding her cognitive limitations, such as her difficulties with reading and writing and her difficulties maintaining past part-time work. *See Orriols*, 2015 WL 5613153, at *5 (internal quotation marks omitted). Thus, there is a reasonable probability that the report, alone or when considered with other evidence in the record, would change the outcome of the decision.

It is less clear, however, that good cause exists for Ms. Perkins's failure to submit the report until July 2016. Ms. Perkins argues that good cause exists because Dr. Morocco had not yet evaluated her at the time of the ALJ's decision, but does not explain why that is the case, in light of her notice to the ALJ that she intended to pursue a claim under Listing 12.05C as of February 18, 2016, and in light of the fact that her attorneys arranged for the evaluation. (R. 91, 442.) This

case is unlike those Ms. Perkins cites, in which the submission of new evidence was unavoidably delayed. *See Orriols*, 2015 WL 5613153, at \*5 (finding good cause where the evidence in question was discovered during an operation that occurred after the date of the hearing); *Adams*, 2016 WL 5334646, at \*3 (finding good cause where the plaintiff was uninsured and was not able to obtain comprehensive health care services). Ms. Perkins has not explained why she was unable to obtain an evaluation from Dr. Morocco earlier than in July 2016, and therefore has not satisfied the "good cause" requirement. *See Scott v. Berryhill*, No. 3:17-CV-211 (JAM), 2018 WL 1608807, at \*8 (D. Conn. Mar. 31, 2018) (finding that good cause did not exist where there was "no indication that any of the newly supplied evidence reveals anything that [the plaintiff's doctor] did not already know before the ALJ decision was rendered," and "nothing prevented plaintiff from getting an independent examination" earlier).

Nonetheless, because the ALJ will have to consider the evidence under Listing 12.05C, and will have a duty to develop the record as needed to do so, the ALJ may find that it is necessary to consider Dr. Morocco's report or any other evidence relevant to the analysis under Listing 12.05C. *See* 20 C.F.R. 404.983 ("Case remanded by a Federal court. . . . . Any issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."); *Prince v. Berryhill*, 304 F. Supp. 3d 281, 291 (D. Conn. 2018) ("Although the additional evidence is not a ground for remand, the ALJ should consider these records given that the case is remanded for another reason.").

### III.     Evaluation of Ms. Perkins's Testimony

Finally, Ms. Perkins argues that the ALJ failed to properly evaluate her testimony. In particular, Ms. Perkins argues that the ALJ failed to apply the Commissioner's March 16, 2016

Ruling, which went into effect just before the ALJ issued its decision in this case, eliminating the use of the term "credibility" and instructing adjudicators to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3P, Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016). Ms. Perkins also argues that the ALJ's evaluation of her subjective statements was not supported by substantial evidence. Because I find that remand is appropriate for consideration of the evidence under Listing 12.05C, I need not consider these arguments, as the ALJ will be required to reevaluate Ms. Perkins's testimony under the correct legal standards when considering that listing.

**CONCLUSION**

Ms. Perkins's motion for an order reversing or remanding the Commissioner's decision (ECF No. 15) is GRANTED. The Commissioner's motion to affirm that decision (ECF No. 18) is DENIED. The case is hereby REMANDED.  Nothing in this opinion is intended to suggest whether or not the ALJ should find Ms. Perkins to be disabled.


IT IS SO ORDERED.

                                                    _____/s/_____
                                                    Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                July 9, 2018